**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **Mousa Adam Camara,** | **Case No. 4:26cv00484** |
| **Petitioners,** | |
| **-vs-** | **JUDGE PAMELA A. BARKER** |
| **Warden Edward Voorhies,** **et al.,** | |
| | **MEMORANDUM OPINION & ORDER** |
| **Respondents.** | |

On February 26, 2026, Petitioner Mousa Adam Camara ("Petitioner" or "Camara") filed a Petition under 28 U.S.C. § 2241 for Writ of Habeas Corpus ("Petition"), in which he asserts that he is presently being unlawfully detained by U.S. Immigration and Customs Enforcement ("ICE") without bond pursuant to 8 U.S.C. § 1225(b)(2)(A). (Doc. No. 1.) Pursuant to an expedited briefing Order issued by this Court, Respondents Ryan Overton, Acting Director of the Cleveland Field Office for U.S. Immigration and Customs Enforcement ("ICE"); Todd Lyons, Acting Director of ICE; Markwayne Mullin, Secretary of the U.S. Department of Homeland Security ("DHS"); Sirce Owen, Acting Director of the Executive Office for Immigration Review ("EOIR"); and Todd Blanche, Attorney General of the United States (hereinafter referred to collectively as "Federal Respondents")[1]

---

[1] Petitioner named Kristi Noem as Respondent Secretary of DHS and Pamela Bondi as Respondent Attorney General of the United States. Pursuant to Fed. R. Civ. P. 21, Markwayne Mullin is substituted in place of Ms. Noem as Secretary of DHS and Todd Blanche is substituted in place of Ms. Bondi as the Attorney General. In addition, the Court notes that Petitioner names Edward Voorhies, Warden of the Northeast Ohio Correctional Center, as a Respondent. The docket reflects that Petitioner failed to serve Respondent Voorhies with a copy of the Petition and its Exhibits. Counsel has not entered an appearance for Respondent Voorhies and Respondent Voorhies did not file a response to the Petition. However, for the reasons set forth *supra*, the Court finds that Respondent Voorhies is not a proper Respondent in this action and he is dismissed with prejudice on that basis.

filed a Return of Writ on April 7, 2026.  (Doc. No. 5.)  Although Petitioner could have done so, he did not file a Response.

For the following reasons, Respondents Voorhies, Lyons, Owen, Mullin, and Blanche are dismissed.  The Petition (Doc. No. 1) is dismissed without prejudice.

## I.    Background[2]

### A.    Factual Allegations

Camara is a native and citizen of the Central African Republic.  (Doc. No. 1 at PageID# 14, ¶ 41.)  He entered the United States on July 19, 2023 near Lukeville, Arizona.  (*Id*.)  (*See also* Doc. No. 5-1 at PageID# 80.)  Camara was detained by U.S. Customs and Border Protection on July 20, 2023.  (Doc. No. 5-1 at PageID# 81.)  According to a "Record of Deportable/Inadmissible Alien" form (DHS Form I-831) completed on that date, Camara "admitted that [he] arrived in the United States at a time and place other than as designated by the Attorney General or the Secretary of Homeland Security by walking across the international boundary and entering illegally."  (*Id*.)

Camara was arrested and transported to Yuma, Arizona.  (*Id*.)  Due to detention capacity limitations, Camara was released on his own recognizance on July 20, 2023.  (Doc. No. 5-1 at PageID# 82.) DHS issued a Form I-862 Notice to Appear which charged Camara with being

---

[2] In setting forth the factual background, the Court relies on the factual allegations in the Petition, as well as the documents attached to the Petition and Return.  (Doc. Nos. 1, 5-1 through 5-7.)  The Court notes that Camara provides only skeletal allegations in his Petition regarding his entry into the United States and his subsequent administrative immigration proceedings.  (Doc. No. 1 at PageID# 14, ¶¶ 40-44.)  Moreover, Camara did not provide copies of the majority of the documentation and filings relating to his immigration proceedings. In the Return, the Federal Respondents provide some additional information regarding Camara's immigration proceedings and some (but not all) of the documents and filings relating to those proceedings.  The Court hereby cautions and reminds counsel for both parties that, in any future petitions in this Court, they should provide a more complete record of the petitioner's administrative immigration proceedings.

inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i),[3] i.e., as an alien present in the United States without being admitted or paroled.  (Doc. No. 5-2 at PageID# 83.)  Camara was placed in removal proceedings and ordered to appear before an Immigration Judge ("IJ") in Cleveland, Ohio on March 13, 2025. (*Id.*)

According to the Federal Respondents, Camara thereafter filed an Application for Asylum and Withholding of Removal on April 10, 2024.[4]  (Doc. No. 5 at PageID# 63.)  After Camara apparently filed "written pleadings ... conceding the charges of removability,"[5] the Immigration Judge ("IJ") issued an Order on April 3, 2025 finding Camara to be removable.  (*Id.*)

On October 22, 2025, Camara was detained by ICE when he reported for his "scheduled check in appointment" at the Brooklyn Heights ICE Field Office.  (Doc. No. 1 at PageID# 14, ¶ 42; Doc. No. 5-3at PageID# 87.)  According to the Federal Respondents, Camara was detained because ICE discovered that Camara had an active warrant for Failure to Appear in Bedford Municipal Court for criminal traffic charges.  (Doc. No. 5-3 at Page ID# 87.)  Camara was transported to, and is currently detained at, the Northeast Ohio Correctional Center ("NEOCC") pending full removal proceedings. (Doc. No. 1 at PageID# 14, ¶ 43.)

Camara filed a request for bond on January 8, 2026.  (Doc. No. 5 at PageID# 64.)  On January 22, 2026, the IJ denied the request without prejudice because Camara's counsel failed to appear for

---

[3] Section 1182(a)(6)(A)(i) provides that:  "An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible." 8 U.S.C. § 1182(a)(6)(A)(i).

[4] Neither Camara nor the Federal Respondents provide this Court with a copy of Camara's asylum application.

[5] Again, neither Camara nor the Federal Respondents provide this Court with a copy of Camara's "written pleadings" in Immigration Court. Nor do either Camara or the Federal Respondents provide this Court with a complete copy of the docket sheet in Camara's immigration proceedings.

the hearing.  (Doc. No. 5-4 at PageID# 89.)  Camara subsequently filed a second request for bond. (Doc. No. 5-5 at PageID# 91.)  On February 5, 2026, the IJ denied Camara's second bond request on the basis of lack of jurisdiction.  (*Id*.)  Although Camara reserved his right to appeal, the Federal Respondents assert (and Camara does not contest) that he did not appeal the IJ's denial of Camara's second bond request.  (*Id*. at PageID# 92; Doc. No. 5-6 at PageID# 93; Doc. No. 5 at PageID# 64.)

Meanwhile, on February 12, 2026, the IJ held a hearing on Camara's application for asylum and withholding of removal.  (Doc. No. 5-7 at PageID# 97.)  On that same date, the IJ granted DHS's Motion to Pretermit, denied Camara's application, and ordered Camara removed to Uganda.  (*Id*. at PageID#s 97-100.)  On February 20, 2026, Camara appealed the IJ's "merits" decision regarding removal to the Board of Immigration Appeals ("BIA").  (*Id*. at PageID#s 94-100.)  That appeal remains pending as of the date of this Order.

**B.     Procedural History**

On February 26, 2026, Camara filed a habeas petition with this Court pursuant to 28 U.S.C. § 2241.  (Doc. No. 1.)  The docket reflects that he did not pay the filing fee or request to proceed *in forma pauperis*.

In his Petition, Camara asserts that he is being unlawfully held without bond because ICE and the IJ have improperly determined that he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), rather than to discretionary bond determinations under 8 U.S.C. § 1226(a).  (*Id*. at PageID#s 2-4, 14, 16-19.)  Camara further alleges that his continued detention without an individualized bond hearing violates his procedural and substantive due process rights.  (*Id*. at PageID#s 17-18.)  Finally, Camara alleges that he is being unlawfully detained without a bond hearing pursuant to the BIA's decision in *Matter of Yajure Hurtado*, 19 I&N Dec. 216 (BIA 2025),

4

arguing that the *Hurtado* decision "violates the Administrative Procedure Act, including because the BIA's decision is arbitrary, capricious, and contrary to law."[6] (*Id.* at PageID# 19.)

Camara asserts claims for  (1) Violation of 8 U.S.C. § 1226(a) and Associated Regulations (Count One); (2) Violation of Fifth Amendment Right to Due Process (Failure to Provide a Bond Hearing under 8 U.S.C. § 1226(a)) (Count Two); (3) Violation of Fifth Amendment Right to Due Process (Failure to Provide an Individualized Hearing for Domestic Civil Detention) (Count Three); (4) Violation of Fifth Amendment Right to Due Process (Substantive Due Process) (Count Four); and (5) Violation of the Administrative Procedure Act, 5 U.S.C. § 706 (Count Five).  (*Id.* at PageID#s 16-19.)

In his Prayer for Relief, Camara requests that this Court: (1) assume jurisdiction over this matter; (2) order that he not be transferred outside the Northern District of Ohio; (3) declare that his detention is unlawful; (4) order his release on conditions the Court deems just and proper; (5) declare that he is or will be detained, if at all, pursuant to § 1226, and is therefore entitled to a bond hearing upon request; (6) "[p]ostpone the effective date of *Matter of Hurtado* pending final resolution of this case under the APA, 5 U.S.C. § 705, and set aside and vacate *Matter of Hurtado* under the APA, 5 U.S.C § 706(2);" (7) "issue a preliminary injunction and Writ of Habeas Corpus ordering

---

[6] The Court notes that the paragraphs in the Petition are repeatedly misnumbered.  *See, e.g.*, Doc. No. 1 at PageID#16 (paragraph 58 followed by paragraph 49); PageID# 17 (paragraph 55 followed by paragraph 46); PageID# 18 (paragraph 51 followed by paragraph 53).  In addition, in the section of the Petition entitled "Jurisdiction, Venue, and Parties" (Doc. No. 1 at PageID# 15), Petitioner states (in relevant part) that: "Venue is also proper under 28 U.S.C. §§ 1391(b)(2), (e). Petitioner and **most members of the putative class** are or will be arrested and/or detained within this District, and a substantial part of the events giving rise to the claims and relevant facts occurred within this District, including the detention of **class members** without a bond hearing and the failure of the Immigration Court  located in Ohio to provide a bond hearing to Petitioner."  (*Id.*) (emphasis added).  Although this particular paragraph of the Petition references "putative class members," it is clear from the Petition as a whole that this action is brought only on behalf of Mr. Camara. Accordingly, the Court construes the above references in the Petition to a "putative class" and "class members" as a scrivener's error.

Respondents to release Petitioner immediately, or, in the alternative, order Respondents to release Petitioner if he is not provided a bond hearing within seven (7) days after the Court's order;" and (8) grant attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d) and 5 U.S.C. §§ 504 *et seq*. (*Id*. at PageID# 19.)

On March 4, 2026, this Court issued an Order noting that "this action cannot move forward until" Camara either pays the filing fee or applies to proceed *in forma pauperis*. *See* Non-Doc. Order dated March 4, 2026. When Camara failed to comply, the Court issued another Order on March 11, 2026, providing as follows: "Petitioner is [] ordered, within 30 days of the date of this Order, either to pay the filing fee - $5.00 - or to file a complete application to proceed *in forma pauperis*. Petitioner is further notified that failure to comply with this Order may result in dismissal of this action without further notice." (Doc. No. 3.)

The docket reflects that Camara paid the filing fee on March 25, 2026. On that same date, the Court directed the Clerk to forward a copy of the Petition to the Office of the United States Attorney, Northern District of Ohio. *See* Non-Doc. Order dated March 25, 2026. In addition, pursuant to 28 U.S.C. § 2243 and for good cause shown, the Court ordered (1) Respondents to respond to the Petition by no later than April 8, 2026; and (2) Petitioner to file a Reply by no later than April 22, 2026. (*Id*.) On April 7, 2026, the Federal Respondents filed a Return of Writ. (Doc. No. 5.) Petitioner failed to file a Response.

## II.     Statutory Framework regarding Detention and Bond

Two statutes principally govern the detention of aliens pending removal proceedings: 8 U.S.C. § 1225 and § 1226. Section 1225(b)(2)(a)(i) provides for mandatory detention pending removal, as follows:

6

(2) INSPECTION OF OTHER ALIENS

(A) In general

Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A). Section 1225 applies to "applicants for admission," who are aliens "present in the United States who [have] not been admitted." 8 U.S.C. § 1225(a)(1). The statute provides that "applicants for admission" must undergo screening by an examining immigration officer, and if it is determined that "an alien seeking admission is not clearly and beyond a doubt entitled to be admitted," he or she "shall be detained for" removal proceedings under Section 1229a. 8 U.S.C. § 1225(b)(2)(A). The only exception to this mandatory detention provision is for aliens who are released "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). *See Lopez-Campos v. Raycraft*, 797 F.Supp.3d 771, 777 (E.D. Mich. Aug. 29, 2025).

Section 1226, by contrast, sets forth a discretionary detention framework. Specifically, Section 1226(a) provides, in relevant part:

(a) ARREST, DETENTION, AND RELEASE

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—

(1) may continue to detain the arrested alien; and

(2) may release the alien on—

(A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General ...

8 U.S.C. § 1226(a).  Subsection (c) of Section 1226 prohibits certain aliens who are inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) by virtue of their presence in the country without being admitted from being released on bond, but only if the alien has also been "charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." 8 U.S.C. § 1226(c)(1)(E). Relevant here, aliens arrested and detained under Section 1226 have a right to request a custody redetermination (i.e. a bond hearing) before an IJ.  *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1).  The IJ evaluates whether there is a risk of nonappearance or danger to the community.

For many years, the Government applied the discretionary detention framework set forth in Section 1226(a) to aliens (such as Petitioner herein) who entered the United States without inspection and were subsequently placed in regular removal proceedings. *See Maldonado v. Olson*, 795 F.Supp.3d 1134, 1150 (D. Minn. Aug. 15, 2025) ("Historically, noncitizens who resided in the United States, but who had previously entered without inspection, were not deemed 'arriving aliens' under § 1225(b), but were instead subject to § 1226(a).")  *See also Rodriguez v. Bostock*, 779 F.Supp.3d 1239, 1259  (W.D. Wash. 2025) (noting ICE's "longstanding agency practice [of] applying Section 1226(a) to inadmissible noncitizens already residing in the country."); *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 2025 WL 2674169 (BIA 2025) ("We acknowledge that for years Immigration Judges have conducted bond hearings for aliens who entered the United States without inspection.")

On May 15, 2025, however, the BIA decided *Matter of Q. Li*, 29 I&N 66, 2025 WL 1442892 (BIA May 15, 2025).  In that decision, the BIA changed course, finding that "an applicant for admission who is arrested and detained without a warrant while arriving in the United States, whether

8

or not at a port of entry, and subsequently placed in removal proceedings is detained under [Section 1225(b)], and is ineligible for any subsequent release on bond under [Section 1226(a)]." *Matter of Q. Li*, 29 I&N at 69.

Several months later, on July 8, 2025, the Government announced a new policy in an internal memorandum entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission."  Pursuant to this policy memo, the Government stated that it now deemed all persons who entered the United States without inspection "applicants for admission" under Section 1225(a) and, therefore, subject to mandatory detention under Section 1225(b)(2)(A).[7]  *See Maldonado*, 2025 WL 2374411 at * 11.  *See also Martinez v. Hyde*, 792 F.Supp.3d 211, 217-218 (D. Mass. 2025) (noting that "mandatory detention for all applicants has ... been the official policy of the [DHS]  .... since July 8, 2025, when Acting Director of [ICE], Todd M. Lyons, issued an internal memorandum explaining that the agency had 'revisited its legal position'").

On September 5, 2025, the BIA issued a precedential decision[8] in *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 2025 WL 2674169 (BIA 2025).  Therein, the BIA considered the following question: "Does the INA require that all applicants for admission, even those like the respondent who have entered without admission or inspection and have been residing in the United States for years

---

[7] To this Court's knowledge, the "Interim Guidance Regarding Detention Authority for Applicants for Admission" policy memorandum is not available on a Government website.  However, a district court recently explained that this internal policy memo was "leaked by legal advocacy groups" and quoted it as providing as follows:  "DHS, in coordination with the Department of Justice (DOJ), has revisited its legal position on detention and release authorities.  DHS has determined that [section 1225] of the Immigration and Nationality Act (INA), rather than [section 1226], is the applicable immigration detention authority for all applicants for admission." *Martinez v. Hyde*, 792 F.Supp.3d 211, 217-218 and fn 10 (D. Mass. 2025).  *See also E.V., et al. v. Raycraft, et al.*, 2025 WL 3122837 at * 9 (N.D. Ohio Nov. 7, 2025).

[8]  The BIA may designate a decision as precedential.  BIA precedential decisions "serve as precedents in all proceedings involving the same issue or issues."  8 C.F.R. § 1003.1(g)(2).  *See Gimenez Gonzalez v. Raycraft*, 2025 WL 3006185 at fn 3 (E.D. Mich. Oct. 27, 2025); *Chavez v. Noem*, 801 F.Supp.3d 1133, 1139 (S.D. Cal. Sept. 24, 2025).

without lawful status, be subject to mandatory detention for the duration of their immigration proceedings, and thus the Immigration Judge lacks authority over a bond request filed by an alien in this category?" *Id*. at 220.  After considering the statutory language and legislative history of Sections 1225 and 1226, the BIA answered this question in the affirmative, concluding that IJs lack authority to grant bond to aliens who are present in the United States without admission, even with respect to aliens who have been residing in the United States for a lengthy period of time following entry without inspection.[9]  *Id*. at 225, 228.

As of the date of this Order, Circuit Courts of Appeals have reached conflicting decisions regarding whether the Government's interpretation of § 1225(b)(2)(A) is lawful.  The Fifth and Eighth Circuits recently ruled in favor of the Government, rejecting the argument that the term "seeking admission" refers only to those aliens who are actively pursuing lawful entry and submitting themselves to inspection by an immigration officer.  *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 501- 508 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128, 1134- 1137 (8th Cir. 2026).  The Second and Eleventh Circuits have disagreed, finding for the petitioners and holding that § 1225(b)(2)(A) does not authorize the mandatory detention of noncitizens unlawfully residing in the United States. *See Cunha v. Freden*, --- F.4th -----, 2026 WL 1146044 (2nd Cir. April 28, 2026); *Hernandez Alvarez*

---

[9] In support of its conclusion, the BIA explained: "Aliens, like the respondent, who surreptitiously cross into the United States remain applicants for admission until and unless they are lawfully inspected and admitted by an immigration officer.  Remaining in the United States for a lengthy period of time following entry without inspection, by itself, does not constitute an 'admission.' [citation omitted].  Likewise, being arrested pursuant to a warrant and placed into removal proceedings does not constitute an admission.  Therefore, just as Immigration Judges have no authority to redetermine the custody of arriving aliens who present themselves at a port of entry, they likewise have no authority to redetermine the custody conditions of an alien who crossed the border unlawfully without inspection, even if that alien has avoided apprehension for more than 2 years.  Holding otherwise would require reading the INA to conclude that Congress intended that aliens unlawfully entering the United States without inspection, particularly those who successfully evaded apprehension for more than 2 years, be rewarded with the opportunity for a bond hearing before an Immigration Judge, whereas aliens who present themselves to officers at a port of entry are ineligible for a bond hearing. This is an incongruous result which is not supported by the plain language or any reasonable interpretation of the INA." *Id.* at 228.

*v. Warden, Federal Detention Center Miami*, --- F. 4th ----, 2026 WL 1243395 (11th Cir. May 6, 2026).  The Seventh Circuit recently issued a divided opinion, which deadlocked on this particular issue.  *See Castanon-Nava, et al. v. U.S. Department of Homeland Security, et al.*, -- F.4th ----, 2026 WL 1223250 (7th Cir. May 5, 2026).  The Sixth Circuit recently heard oral argument on this issue but (as of the date of this Order) has not yet ruled.  *See Lopez-Campos, et al. v. Raycraft, et al.*, Case No. 25-1965 (6th Cir.) (oral argument held on March 18, 2026).

### III.    Analysis

In Count One of the Petition, Camara asserts that he is entitled to a bond hearing "[u]nder § 1226(a) and its associated regulations."  (Doc. No. 1 at PageID# 16.)  In Count Two, Camara asserts that "[b]ecause [he] is subject to detention, if at all, under 8 U.S.C. § 1226(a), the Due Process Clause of the Fifth Amendment to the United States Constitution requires that [he] receive a bond hearing with strong procedural protections."  (*Id.* at PageID# 17.)  In Count Three, Camara alleges that his continued detention without an individualized bond hearing is unlawful under the Fifth Amendment, "regardless of what statute might apply to authorize such detention."  (*Id.* at PageID# 18.)   In Count Four, Camara asserts a substantive Fifth Amendment due process claim, alleging that "[b]ecause [he] is not being provided a bond hearing, the government is not taking any steps to effectuate its substantive obligation to ensure that immigration detention bears a 'reasonable relation' to the purposes of immigration detention ... and is not impermissibly punitive."  (*Id.*)  And, lastly, in Count Five, Camara alleges that "the BIA's decision in *Matter of Hurtado* is unlawful because it violates the [APA], including because the BIA's decision is arbitrary, capricious, and contrary to law."  (*Id.* at PageID# 19.)

11

In the Return, the Federal Respondents first request that the Court dismiss all Respondents except Respondent Ryan Overton (the Director of ICE's Cleveland Field Office) because Overton has custody over Camara for purposes of the instant Petition and is, therefore, the only proper Respondent.  (Doc. No. 5 at PageID# 63, fn 1).  The Federal Respondents next argue that the Petition should be dismissed in its entirety because Camara failed to exhaust his administrative remedies.  (*Id*. at PageID#s 64-67)  On the merits, the Federal Respondents maintain that Camara's statutory claims fail because ICE properly detained him under § 1225(b)(2) and, therefore, he is not entitled to a bond hearing.  (*Id*. at PageID#s 67-77.)  The Federal Respondents argue that Camara's procedural due process claims fail because his confinement is lawful and he is "being detained for the limited purpose of removal proceedings and determining his removability."  (*Id*. at PageID#s 77-78.)  Lastly, the Federal Respondents maintain that Camara's substantive due process claim fails because his detention has not become unreasonably prolonged and "detention pending removal proceedings is constitutionally permissible."  (*Id*. at PageID# 78.)

Camara did not file a response to the Federal Respondents' Return of Writ.  In his Petition, however, Camara asserts that he should not be required to exhaust his administrative remedies because the issues raised in the Petition are purely legal in nature and because administrative review is likely futile and would not provide him with the relief he seeks "in a timely manner."  (Doc. No. 1 at PageID#s 10-13.)  On the merits, Camara argues that "as a person arrested inside the United States and held in civil immigration detention for pending removal proceedings, [he] is subject to detention, if at all, pursuant to 8 U.S.C. § 1226" and, therefore, he is entitled to an individualized bond hearing.  (*Id*. at PageID#s 14-15.) Lastly, Camara maintains that his continued detention without an

individualized hearing violates both his procedural and substantive due process rights under the Fifth Amendment.  (*Id*. at PageID#s 5, 17-18.)

The Court will address the parties' arguments, in turn, below.

### A.      Proper Respondent

The Federal Respondents first argue (summarily and in a footnote) that "[a] writ of habeas corpus may only be issued by the person having custody of the detainee."  (Doc. No. 5 at PageID# 63, fn 1.)  Citing *Roman v. Ashcroft*, 340 F.3d 314 (6th Cir. 2003), the Federal Respondents maintain that "in the ICE context, that person is the Field Office Director for ICE."  (*Id*.)  The Federal Respondents therefore maintain that "all other Respondents" (i.e., Respondents Voorhies, Lyons, Owen, Mullin, and Blanche) are not proper respondents and should be dismissed.  (*Id*.)  Camara fails to acknowledge, address, or otherwise respond to this argument.[10]

Pursuant to 28 U.S.C. § 2243, a writ of habeas corpus may be issued by "the person having custody of the person detained."  In the context of a habeas corpus petition filed by an alien detained in a local detention facility contracted by ICE, the Sixth Circuit has held that "although the warden of each detention facility technically has day-to-day control over alien detainees, the [ICE District] Director for the district where a detention facility is located 'has power over' alien habeas corpus petitioners."  *Roman v. Ashcroft*, 340 F.3d 314, 320 (6th Cir. 2003).  Therefore, the Sixth Circuit explained, "a detained alien generally must designate his immediate custodian – the INS District Director for the district where he is being detained—as the respondent to his habeas corpus petition."  *Roman,* 340 F.3d at 320.  *See also Woldeghergish v. Lynch*, 2025 WL 2469584 at * 1 (S.D. Ohio

---

[10] In the Petition, Camara does not directly address this issue and states only that "[o]ne or more of the respondents is Petitioner's immediate custodian."  (Doc. No. 1 at PageID# 16.)

Aug. 5, 2025), *adopted by* 2025 WL 2468042 (S.D. Ohio Aug. 27, 2025); *Hango v. McAleenan*, 2019 WL 7944352 at *2-3 (N.D. Ohio Nov. 13, 2019), *adopted by* 2019 WL 6695829 (N.D. Ohio Dec. 9, 2019); *Orozco-Valenzuela v. Holder*, 2015 WL 1530631 at * 4 (N.D. Ohio April 6, 2015).

In light of the above, and in the absence of any opposition from Camara, the Court grants the Federal Respondents' request that Respondents Voorhies, Lyons, Owen, Mullin, and Blanche be dismissed.[11]  The only remaining Respondent, then, is Respondent Overton.

### B.      Exhaustion of Administrative Remedies

The Court will next address the Federal Respondents' argument that the Petition should be dismissed without prejudice because Camara failed to exhaust his administrative remedies.  The general rule is that "a party may not seek federal judicial review of an adverse administrative determination until the party has first sought all possible relief within the agency itself."  *Howell v. INS*, 72 F.3d 288, 291 (2nd Cir. 1995) (quoting *Guitard v. United States Sec'y of Navy*, 967 F.2d 737, 740 (2nd Cir. 1992)) (internal quotation marks omitted).  *See also Beharry v. Ashcroft*, 329 F.3d 51, 56 (2nd Cir. 2003).  "Exhaustion of administrative remedies serves numerous purposes, including protecting the authority of administrative agencies, limiting interference in agency affairs, and promoting judicial efficiency by resolving potential issues and developing the factual record."  *Beharry,* 329 F.3d at 56.  *See also Anversa v. Partners Healthcare Sys., Inc.*, 835 F.3d 167, 175-176 (1st Cir. 2016) (noting that exhaustion allows "an agency the first opportunity to apply [its] expertise"

---

[11] In *Roman,* the Sixth Circuit further explained that the Attorney General may also be named as a respondent to an alien's habeas corpus petition "under extraordinary circumstances where it is necessary to preserve a person's access to habeas corpus relief."  *Roman,* 340 F.3d at 325.  Here, Camara does not argue that there are any "extraordinary circumstances" that would warrant naming Attorney General Blanche as a Respondent herein.  Thus, the Court does not reach this issue.

14

and "obviat[es] the need for [judicial] review in cases in which the agency provides appropriate redress.")

The requirement of administrative exhaustion can be either statutorily or judicially imposed as a matter of prudence. *See Beharry*, 329 F.3d at 56. *See also Perkovic v. I.N.S.,* 33 F.3d 615, 619 (6th Cir. 1994) (holding that exhaustion requirements not written into the text of a statute are prudential, not jurisdictional); *Brito v. Garland,* 22 F.4th 240, 255 (1st Cir. 2021) ("There are two species of exhaustion: statutory and common-law."); *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007). "The former deprives a federal court of jurisdiction, while the latter 'cedes discretion to a [federal] court to decline the exercise of jurisdiction.'" *Brito,* 22 F.4th at 255 (quoting *Anversa*, 835 F.3d at 174). *See also Puga*, 488 F.3d at 815. In other words, "exhaustion of administrative remedies is absolutely required if explicitly mandated by Congress," but "courts have more latitude in dealing with exhaustion questions when Congress has remained silent." *Portela-Gonzalez v. Sec'y of the Navy*, 109 F.3d 74, 77 (1st Cir. 1997).

Here, the parties agree (and the Court presumes) that the requirement of administrative exhaustion in the instant matter falls within this Court's discretion. (Doc. No. 1 at PageID#s 10-11; Doc. No. 5 at PageID# 65.) The Court notes that the parties fail to direct this Court's attention to any binding authority regarding the appropriate standard for evaluating whether to require exhaustion as a prudential matter in this context. And this Court is not aware of any Sixth Circuit precedent regarding the application of prudential exhaustion in this particular context.[12] Several other Circuits,

---

[12] The Sixth Circuit has held that, as a general rule, "[f]ederal prisoners must exhaust their administrative remedies prior to filing a habeas petition under § 2241." *Fazzini v. Northeast Ohio Correctional Center*, 473 F.3d 229, 231 (6th Cir. 2006). *See also Little v. Hopkins,* 638 F.2d 953, 953-954 (6th Cir. 1981); *Aron v. LaManna*, 4 Fed. Appx. 232, 233 (6th Cir. 2001). Moreover, in several recent decisions, District Judges in the Northern and Southern Districts of Ohio have applied principles of prudential exhaustion to dismiss § 2241 petitions without prejudice due to the petitioner's failure to

however, have examined prudential exhaustion in similar circumstances.  Consistent with other recent district court decisions in this Circuit, this Court will set forth and apply the Ninth Circuit's test for prudential exhaustion below.[13]  Under the Ninth Circuit's test, courts may require prudential exhaustion when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Puga,* 488 F.3d at 815 (citations omitted) (hereinafter "the *Puga* factors").  *See also Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017).  If a petitioner fails to exhaust prudentially required administrative remedies, then "a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011).

The Court has carefully considered the *Puga* factors and, for the reasons set forth below, finds that all three weigh in favor of requiring administrative exhaustion.  Beginning with the first *Puga*

---

appeal an IJ's denial of bond to the BIA before filing his or her habeas petition.  *See Bartolon v. Bondi,* 813 F.Supp.3d 811, 823-826 (S.D. Ohio 2025); *Monroy Villalta v. Greene, et al.,* 794 F.Supp.3d 528, 530 (N.D. Ohio 2025); *Singh v. Raycraft*, 2026 WL 948367 (S.D. Ohio April 8, 2026); *Amaya-Velis v. Raycraft*, 2026 WL 100596 (N.D. Ohio Jan. 14, 2026); *Munoz-Nataren v. Raycraft*, 2026 WL 214368 (N.D. Ohio Jan. 28, 2026); *Mendoza v. Raycraft*, 2025 WL 3157796 (N.D. Ohio Nov. 12, 2025); *Laguna Espinoza v. Director of Detroit Field Office, ICE*, 2025 WL 2878173 (N.D. Ohio Oct. 9, 2025); *Abdoulaye Ba v. Director of Detroit Field Office, ICE,* 2025 WL 2977712 (N.D. Ohio Oct. 22, 2025).

[13] As one district court noted, "the Sixth Circuit has endorsed [the Ninth Circuit's] procedure for challenging bond determinations, albeit in a short, unpublished order." *Monroy Villalta v. Greene*, 794 F.Supp.3d at 530 (citing *Rabi v. Sessions*, 2018 U.S. App. Lexis 19661 (6th Cir. July 16, 2018)) (citing *Leonardo v. Crawford*, 646 F.3d 1157 (9th Cir. 2011)).  *See also Shweika v. DHS*, 2015 WL 6541689 (E.D. Mich. Oct. 29, 2015).  And in recent months numerous district courts in this Circuit (including this Court) have applied the Ninth Circuit's test for prudential exhaustion in the immigration context, including in the context of challenges to an IJ's denial of bond. *See, e g., Rodriguez v. Noem*, 812 F.Supp.3d 751, 757 (W.D. Mich. 2025); *Lopez-Campos*, 797 F.Supp.3d at 778; *Singh v. Stevens*, ---- F.Supp.3d -----, 2026 WL 456489 at * 3-4 (N.D. Ohio 2026); *Bartolon*, 813 F.Supp.3d at 823-824; *Mejia v. Woosley*, 2025 WL 2933852 at * 2 (W.D. Ky. Oct. 15, 2025); *Hernandez Torrealba v. U.S. Dep't of Homeland Security*, 2025 WL 2444114 at * 8-9 (N.D. Ohio Aug. 25, 2025).

16

factor, the Court finds that the IJ's and BIA's expertise makes agency consideration beneficial to generate a proper record and reach a proper decision.  While an agency's interpretation of a statute "cannot bind a court," agency expertise "has always been one of the factors which may give an Executive Branch interpretation particular power to persuade, if lacking power to control." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 402 (2024) (quotation omitted).  Here, Camara challenges his continued detention without an individualized bond hearing before this Court, and the record does not contain any evidence that he has appealed this issue to the BIA.  The Court finds that principles of exhaustion weigh in favor of requiring Camara to further pursue his administrative remedies regarding the issue of bond[14] so that the agency may apply its considerable expertise to consider and determine any arguments Camara may make to support his position that his detention is governed by § 1226(a) as opposed by § 1225(b)(2)(A).[15]  This is particularly so given that "any determination regarding detention here turns on interpretation and application of the governing removal regime." *Monroy Villalta*, 794 F. Supp. 3d at 531.  As other district courts in this Circuit have noted, "[i]n the first instance, such review should proceed before the [agency] to apply its experience and expertise without judicial interference."  *Id*. (quotation omitted).  *See also Bartolon*, 813 F.Supp.3d at 824; *Singh*, 2026 WL 948367 at * 4.

The Court further finds that the second *Puga* factor also weighs in favor of requiring exhaustion because the Court "has concerns that relaxing the exhaustion requirement would

---

[14] Neither party specifically identifies or addresses what administrative avenues may be available to Camara at this point regarding the issue of bond.  Notably, however, Camara does not argue that there are no administrative remedies available to him at this time with respect to this issue. Thus, the Court deems any such argument waived.

[15] As the Federal Respondents correctly note, "Camara has not even attempted to distinguish his situation from *Matter of Yajure Hurtado* by filing an appeal with the BIA and making the appropriate arguments."  (Doc. No. 5 at PageID# 66.) For example, "Camara could have attempted to distinguish *Hurtado* on the grounds that he is an applicant for asylum, rather an individual granted Temporary Protected Status as was the case in *Hurtado*." (*Id*.)

17

encourage the deliberate bypass of the administrative scheme in favor of what may be perceived as a potentially more favorable and/or timely reviewing body, i.e., federal court." *Mendoza*, 2025 WL 3157796 at *10.  In this case, Camara's "apparent attempt to sidestep the BIA appeals process in favor of habeas review highlights the need for an exhaustion requirement [] to protect agency authority, limit interference with agency affairs, and promote judicial efficiency."  *Bartolon*, 813 F.Supp.3d at 824.  *See also Singh*, 2026 WL 948367 at * 4.

Finally, the Court finds that the third *Puga* factor weighs in favor of requiring exhaustion, as administrative review would allow the agency to correct its own alleged mistakes and alleviate the need for judicial review.  Indeed, Camara does not contest that the BIA could provide the same relief he now seeks before this Court, either through his appeal of the IJ's order removing him to Uganda or any possible future bond proceedings.  *See Tecum Pastor v. Director of Detroit Field Office, et al.,* 814 F.Supp.3d 875, 880 (N.D. Ohio 2025) (explaining that "a constitutional challenge to detention pending removal and entitlement to a bond hearing pending removal collapse into analysis of the statutory and regulatory regime").  "Requiring exhaustion under these circumstances therefore promotes the main purposes of exhaustion, i.e., it protects the BIA's authority by allowing it the opportunity to correct its own mistakes and, further, promotes judicial efficiency by resolving potential issues and potentially obviating the need for judicial review." *Mendoza*, 2025 WL 3157796 at *10.

Accordingly, and for all the reasons set forth above, the Court finds that the three *Puga* factors weigh in favor of requiring Petitioner to exhaust his administrative remedies.  Nonetheless, even if the three *Puga* factors weigh in favor of requiring exhaustion, a court may waive the prudential exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of

administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (citation and quotation marks omitted). *See Beharry*, 329 F.3d at 62 (finding that exhaustion of administrative remedies may not be required when "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question.") (quotation omitted). *See also Aron*, 4 Fed. Appx. at 233 (affirming dismissal of § 2241 petition on basis of failure to exhaust administrative remedies where "nothing in the record indicates that it would have been futile for Aron to pursue his administrative remedies or that those remedies would have been unable to afford him the relief he requests.").

Here, Camara argues that this Court should exercise its discretion to waive the prudential exhaustion requirement.  (Doc. No. 1 at PageID#s 12-13.)  Specifically, Camara argues:

[] Within this context, bond appeals before the BIA, on average, take roughly six months to complete. *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1245 (W.D. Wash. 2025).  Requiring Petitioner in this case to wait an additional six months for the BIA to reach a decision on whether or not he is entitled to a bond hearing would be futile. The absolute futility of requiring administrative exhaustion in this case is only enhanced by the Court's finding in *Lopez-Campos* that it is the Government's position - across all relevant agencies and departments, which would include the BIA - that mandatory detention is the position to be taken at the outset of proceedings. *See Lopez-Campos* at *10 (E.D. Mich. Aug. 29, 2025); *see also Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025).

[] Given the rapid pace at which the Government is seeking to remove individuals such as Petitioner, it is more likely than not that a removal determination would come before the BIA's determination of whether he is entitled to a bond hearing. Therefore, a waiver is appropriate as awaiting the decision of an appeal to the BIA while mandatorily detained without bond would "certainly equate to hardship." *Lopez-Campos*, 2025 WL 2496379 at *11 (E.D. Mich. Aug. 29, 2025). As the Court succinctly stated, "...*any delay* results in the very harm Lopez-Campos is trying to avoid by seeking the bond hearing - detention." *Id* (emphasis added).

19

(*Id*.) (emphasis in original).

Upon careful consideration, the Court declines to waive the administrative exhaustion requirement. As an initial matter, the Court rejects Camara's argument that this Court should waive the exhaustion requirement because bond appeals before the BIA take an average of six months and it would be unfair to make Camara wait that long for a decision. As set forth *supra*, the IJ denied Camara's second bond request just over three months ago -- on February 5, 2026. Camara could have immediately appealed the IJ's ruling to the BIA but chose not to do so. Had he promptly appealed, a ruling by the BIA might be issued imminently (or, potentially, have already been issued). Camara, however, made the conscious choice not to appeal the IJ's February 2026 bond decision. Under these circumstances, the Court is not persuaded by his argument that the exhaustion requirement should be waived because of the length of time it might now take for him to seek a new bond determination by the IJ and/or seek leave to pursue an untimely appeal to the BIA of the IJ's February 5, 2026 denial of bond.

The Court also rejects Camara's argument that the exhaustion requirement should be waived because any potential future administrative bond proceedings would be futile, given the BIA's precedential decision in *Matter of Yajure Hurtado*. As this Court has previously explained, "courts have found that the alleged probability that a petitioner's argument in administrative proceedings may fail is 'not tantamount to stating that it would be futile to raise it.'" *Hernandez Torrealba*, 2025 WL 2444114 at * 11 (quoting *Beharry*, 329 F.3d at 62). Indeed, to the contrary, "many of the purposes for requiring exhaustion" may be served by permitting agency review in the first instance. *Id. See also Bartolon*, 813 F.Supp.3d at 826. Thus, the Court finds that the alleged futility of any potential future administrative bond proceedings is not a proper basis for waiving the exhaustion requirement.

20

Although not raised by either party, the Court further finds that Camara's failure to timely appeal the IJ's February 5, 2026 bond decision to the BIA is also insufficient to deem exhaustion futile, as "exhaustion may not be achieved through a litigant's procedural default of his or her available remedies." *Laing*, 370 F.3d at 998.  As another district court in this Circuit recently explained under similar circumstances, "waiver is inappropriate here because, if the exhaustion requirement were waived in every case where a party failed to timely file for an administrative appeal, then 'any party could obtain judicial review of initial agency actions simply by waiting for the administrative appeal period to run and then filing an action in district court.'"  *Singh*, 2026 WL 948367 at * 5 (quoting *Stock W. Corp. v. Lujan*, 982 F.2d 1389, 1394 (9th Cir. 1993)).

The Court next rejects Camara's argument that exhaustion should be waived because he raises constitutional claims in his Petition.  In support of this argument, Camara relies principally on the Sixth Circuit's decision in *Bangura v. Hansen*, 434 F.3d 487 (6th Cir. 2006).  (Doc. No. 1 at PageID# 13.)  In that case, Plaintiff and her husband argued that the BIA's denial of Plaintiff's spousal immigration petition violated the Due Process Clause, the INA, and the APA.  *Id*. at 491.  Defendants moved to dismiss on the basis of lack of subject matter jurisdiction because Plaintiffs had failed to exhaust their administrative remedies, as well as for failure to state a claim.  *Id.* at 493.  The district court dismissed Plaintiffs' procedural due process claim on the basis of failure to exhaust, and rejected Plaintiffs' substantive due process claim for failure to state a claim.  *Id.*

On appeal, the Sixth Circuit found that the district court had erred in dismissing Plaintiffs' procedural due process claim for failure to exhaust.  The court explained as follows:

> [T]he Supreme Court has long held that ... the exhaustion requirement is far from absolute. *** **Exhaustion of administrative remedies may not be required in cases of non-frivolous constitutional challenges to an agency's procedures**. *** In the immigration context, several circuits have indicated that "constitutional challenges to

21

the INA and INS procedures and some due process claims do not require exhaustion because the BIA does not have the power to adjudicate these claims." *Sundar v. INS*, 328 F.3d 1320, 1325 (11th Cir.2003) ***

In this case, the district court erred in holding that Plaintiffs were required to exhaust their administrative remedies before filing in federal court. It is undisputed that no statute or administrative rule required Plaintiffs to exhaust their administrative remedies. *** Thus, **whether Plaintiffs should be required to exhaust their administrative remedies is a matter of sound judicial discretion**. *** **Here, requiring Plaintiffs to exhaust their administrative remedies does not serve the interests of judicial economy**. Although the BIA undoubtedly could grant Plaintiffs some relief and possibly render Plaintiffs' procedural due process claim moot, it does not have the authority to adjudicate Plaintiffs' substantive due process claim. *** Moreover, as discussed *infra* at Section II, this Court must address the merits of one of Plaintiffs' APA claims. It does not serve the interests of judicial economy to dismiss Plaintiffs' claims for failure to exhaust when the federal courts must nonetheless hear other claims that are integrally related to the dismissed claims. Therefore, the district court abused its discretion in dismissing Plaintiffs' procedural due process claim for failure to exhaust administrative remedies.

*Id*. at 493-494 (internal citations omitted) (emphasis added).

The Court finds that *Bangura* does not require district courts to waive exhaustion in every instance where a non-frivolous constitutional claim is raised. Rather, in *Bangura*, the Sixth Circuit emphasized that, while district courts *may* elect to waive exhaustion where a petitioner raises a non-frivolous constitutional questions, the decision of whether to require exhaustion of administrative remedies is ultimately committed to the district court's "sound judicial discretion." *Id*. at 494. Indeed, in subsequent cases, the Sixth Circuit has continued to emphasize the discretionary nature of the waiver of exhaustion, expressly noting that while "exhaustion need not be required for non-frivolous questions," "this does not mean that all non-frivolous constitutional challenges are free from exhaustion requirements." *Shearson v. Holder*, 725 F.3d 588, 594-595 (6th Cir. 2013).

Here, the Court finds that waiver is not required. While Camara raises due process challenges relating to his continued detention without an individualized bond hearing, his due process claims

22

(like his statutory and APA claims) are predicated on the IJ's allegedly incorrect interpretation and application of Sections 1225 and 1226.  This Court finds that, under these circumstances, "any determination regarding detention [] turns on an interpretation and application of the governing removal regime" and "in the first instance, such review should proceed before the [BIA] to 'apply its experience and expertise without judicial interference.'"  *Laguna Espinoza*, 2025 WL 2878173 at * 2 (internal quotation omitted.)  *See Abdoulaye Ba,* 2025 WL 2977712 at * 2 (same)*.  See also Rojas-Garcia v. Ashcroft*, 339 F.3d 814, 819 (9th Cir. 2003) (acknowledging that a "petitioner must exhaust administrative remedies before raising the constitutional claims in a habeas petition when those claims are reviewable by the BIA on appeal").  Accordingly, and for all the reasons set forth above, the Court declines to waive the exhaustion requirement based on the alleged futility of Camara's potential future administrative bond proceedings before the IJ and/or BIA.

Lastly, Camara expresses concern as to the delay that would result from requiring administrative exhaustion. (Doc. No. 1 at PageID# 13.)  Courts have discretion to waive the exhaustion requirement and rule on a matter when the "legal question is 'fit' for resolution and delay means hardship."  *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000) (citation omitted).  While some courts in this Circuit have chosen to waive exhaustion because of the delay caused by a potentially lengthy appeal process, such a decision remains in the Court's discretion.  *See Bartolon*, 813 F.Supp.3d at 826.  Moreover, the Court notes that, "in many of those cases, the district courts supported their decision to waive exhaustion with both a finding of futility and undue hardship, not just the latter." *Id*.  Here, however, the Court finds here that Camara has not demonstrated futility.  Absent binding precedent to the contrary, this Court therefore declines to find that the risk of further delay alone warrants a waiver of exhaustion.

Accordingly, and for all of the above reasons, the Court finds that Camara must exhaust his administrative remedies before obtaining federal district court review of the claims set forth in the Petition.  Thus, and because Camara has failed to demonstrate grounds for excusing exhaustion, the Court dismisses the Petition without prejudice.

## IV.     Conclusion

For all the reasons set forth above, Respondents Voorhies, Lyons, Owen, Mullin, and Blanche are hereby dismissed, and the Petition (Doc. No. 1) is DISMISSED WITHOUT PREJUDICE.

## CERTIFICATE OF APPEALABILITY

Without a certificate of appealability, a habeas petitioner cannot appeal a final order in a habeas proceeding. 28 U.S.C. § 2253(c)(1). Issuance of a certificate of appealability requires a petitioner to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  This means that the petitioner must show that reasonable jurists could find the district court's determination of the relevant constitutional claims debatable or incorrect. *Tennard v. Dretke*, 542 U.S. 274, 282 (2004).  The petitioner need not show that the appeal would succeed to be eligible for a certificate of appealability.  *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Because of an absence of controlling precedent in this Circuit on the proper procedure on the facts and circumstances presented, the Court acknowledges that reasonable jurists may disagree with the application of prudential exhaustion herein.  For these reasons, the Court GRANTS a Certificate of Appealability on Counts One through Five of the Petition.

**IT IS SO ORDERED.**

Dated:  May 8, 2026                    *s/Pamela A. Barker*
                                       PAMELA A. BARKER
                                       UNITED STATES DISTRICT JUDGE

24