**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **Mousa Adam Camara,** | **Case No. 4:26cv00484** |
| **Petitioners,** | |
| **-vs-** | **JUDGE PAMELA A. BARKER** |
| **Warden Edward Voorhies,** **et al.,** | |
| | **MEMORANDUM OPINION & ORDER** |
| **Respondents.** | |

Currently pending is Petitioner Mousa Adam Camara's (hereinafter "Petitioner" or "Camara") "Request to Reconsider Denial of Writ of Habeas Corpus Based on Change in Relevant 6th Circuit Law" (hereinafter "Motion for Reconsideration").  (Doc. No. 9.)  Respondents Ryan Overton, Acting Director of the Cleveland Field Office for U.S. Immigration and Customs Enforcement ("ICE"); Todd Lyons, Acting Director of ICE; Markwayne Mullin, Secretary of the U.S. Department of Homeland Security ("DHS"); Sirce Owen, Acting Director of the Executive Office for Immigration Review ("EOIR"); and Todd Blanche, Attorney General of the United States (hereinafter referred to collectively as "Respondents")[1] filed a Brief in Opposition on June 1, 2026.  (Doc. No. 10.)  Petitioner did not file a Reply.

For the following reasons, Petitioner's Motion for Reconsideration (Doc. No. 9) is DENIED.

---

[1] Petitioner named Kristi Noem as Respondent Secretary of DHS and Pamela Bondi as Respondent Attorney General of the United States.  Pursuant to Fed. R. Civ. P. 25, Markwayne Mullin was substituted in place of Ms. Noem as Secretary of DHS and Todd Blanche was substituted in place of Ms. Bondi as the Attorney General.  In addition, Petitioner named Edward Voorhies, Warden of the Northeast Ohio Correctional Center, as a Respondent.  Petitioner failed to serve Respondent Voorhies with a copy of the Petition, and counsel has not entered an appearance for Respondent Voorhies in this action.  As discussed *infra,* in its May 8, 2026 Opinion & Order, this Court found that Respondent Voorhies is not a proper Respondent and dismissed him from this action with prejudice on that basis.

I.      **Relevant Background**[2]

      A.      **Factual Allegations**

Camara is a native and citizen of the Central African Republic.  (Doc. No. 1 at PageID# 14, ¶ 41.)  He entered the United States on July 19, 2023 near Lukeville, Arizona.  (*Id*.)  (*See also* Doc. No. 5-1 at PageID# 80.)  Camara was detained by U.S. Customs and Border Protection on July 20, 2023. (Doc. No. 5-1 at PageID#s 80-81.)  According to a "Record of Deportable/Inadmissible Alien" form (DHS Forms I-213/I-831) completed on that date, Camara "admitted that [he] arrived in the United States at a time and place other than as designated by the Attorney General or the Secretary of Homeland Security by walking across the international boundary and entering illegally."  (*Id*. at PageID# 81.)

Camara was arrested and transported to Yuma, Arizona.  (*Id*.)  Due to detention capacity limitations, Camara was released on his own recognizance on July 20, 2023.  (Doc. No. 5-1 at PageID# 82.) DHS issued a Form I-862 Notice to Appear which charged Camara with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i), i.e., as an alien present in the United States without being admitted or paroled. (Doc. No. 5-2 at PageID# 83.)  Camara was placed in removal proceedings and ordered to appear before an Immigration Judge ("IJ") in Cleveland, Ohio on March 13, 2025. (*Id*.)  Camara thereafter filed an Application for Asylum and Withholding of Removal on April 10, 2024.  (Doc. No. 5 at PageID# 63.)  After Camara apparently filed "written pleadings ... conceding the charges of removability," the Immigration Judge ("IJ") issued an Order on April 3, 2025 finding Camara to be removable.  (*Id.*)

---

[2] In setting forth the relevant factual background, the Court relies on the factual allegations in the Petition, as well as the documents attached to the Petition and Return.  (Doc. Nos. 1, 5-1 through 5-7.)

On October 22, 2025, Camara was detained by ICE when he reported for his "scheduled check in appointment" at the Brooklyn Heights ICE Field Office.  (Doc. No. 1 at PageID# 14, ¶ 42; Doc. No. 5-3at PageID# 87.)  According to the Federal Respondents, Camara was detained because ICE discovered that Camara had an active warrant for Failure to Appear in Bedford Municipal Court for criminal traffic charges.  (Doc. No. 5-3 at Page ID# 87.)  Camara was transported to, and (to the best of this Court's knowledge) is currently detained at, the Northeast Ohio Correctional Center ("NEOCC") pending full removal proceedings.  (Doc. No. 1 at PageID# 14, ¶ 43.)

Camara filed a request for bond on January 8, 2026.  (Doc. No. 5 at PageID# 64.)  On January 22, 2026, the IJ denied the request without prejudice because Camara's counsel failed to appear for the hearing.  (Doc. No. 5-4 at PageID# 89.)  Camara subsequently filed a second request for bond. (Doc. No. 5-5 at PageID# 91.)  On February 5, 2026, the IJ denied Camara's second bond request on the basis of lack of jurisdiction.  (*Id*.)  Although Camara reserved his right to appeal, Respondents assert (and Camara does not contest) that he did not appeal the IJ's denial of Camara's second bond request.  (*Id*. at PageID# 92; Doc. No. 5-6 at PageID# 93; Doc. No. 5 at PageID# 64.)

Meanwhile, on February 12, 2026, the IJ held a hearing on Camara's application for asylum and withholding of removal.  (Doc. No. 5-7 at PageID# 97.)  On that same date, the IJ granted DHS's Motion to Pretermit, denied Camara's application, and ordered Camara removed to Uganda.  (*Id*. at PageID#s 97-100.)  On February 20, 2026, Camara appealed the IJ's "merits" decision regarding removal to the Board of Immigration Appeals ("BIA").  (*Id.* at PageID#s 94-100.)  According to EOIR's Automated Case Information system, that appeal remains pending as of the date of this Order.

B.      **Procedural History**

1.      **Camara's § 2241 Habeas Petition**

3

On February 26, 2026, Camara filed a habeas petition with this Court pursuant to 28 U.S.C. § 2241.[3]  (Doc. No. 1.)  Therein, Camara asserted that he was being unlawfully held without bond because ICE and the IJ improperly determined that he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), rather than to discretionary bond determinations under 8 U.S.C. § 1226(a).[4] (*Id.* at PageID#s 2-4, 14, 16-19.) Camara further alleged that his continued detention without an individualized bond hearing violated his procedural and substantive due process rights.  (*Id*. at PageID#s 17-18.)  Finally, Camara alleged that he was being unlawfully detained without a bond hearing pursuant to the BIA's decision in *Matter of Yajure Hurtado*, 19 I&N Dec. 216 (BIA 2025), arguing that the *Hurtado* decision "violates the Administrative Procedure Act, including because the BIA's decision is arbitrary, capricious, and contrary to law."  (*Id.* at PageID# 19.)

Camara asserted claims for  (1) Violation of 8 U.S.C. § 1226(a) and Associated Regulations (Count One); (2) Violation of Fifth Amendment Right to Due Process (Failure to Provide a Bond Hearing under 8 U.S.C. § 1226(a)) (Count Two); (3) Violation of Fifth Amendment Right to Due Process (Failure to Provide an Individualized Hearing for Domestic Civil Detention) (Count Three); (4) Violation of Fifth Amendment Right to Due Process (Substantive Due Process) (Count Four); and (5) Violation of the Administrative Procedure Act, 5 U.S.C. § 706 (Count Five).  (*Id.* at PageID#s 16-19.)  Camara requested, in relevant part, that this Court: (1) declare that his detention is unlawful; (2) order his release on conditions the Court deems just and proper; (3) declare that he is or will be detained, if at all, pursuant to § 1226, and is therefore entitled to a bond hearing upon request; and

---

[3] The docket reflects that Camara did not pay the filing fee or request to proceed *in forma pauperis*.

[4] The Court set forth a discussion of the statutory framework regarding detention and bond in its May 8, 2026 Memorandum Opinion & Order (Doc. No. 7 at PageID#s 107-112) and will not repeat that information herein.

(4) "issue a preliminary injunction and Writ of Habeas Corpus ordering Respondents to release Petitioner immediately, or, in the alternative, order Respondents to release Petitioner if he is not provided a bond hearing within seven (7) days after the Court's order." (*Id*. at PageID# 19.)

After this Court issued several Orders prompting him to do so, Camara paid the filing fee on March 25, 2026. On that same date, the Court ordered (1) Respondents to respond to the Petition by no later than April 8, 2026; and (2) Petitioner to file a Reply by no later than April 22, 2026. On April 7, 2026, Respondents filed their Return of Writ. (Doc. No. 5.) Camara failed to file a Response.

On May 8, 2026, this Court issued a Memorandum Opinion & Order and Judgment Entry (1) dismissing Respondents Voorhies, Lyons, Owen, Mullin, and Blanche on the grounds that they were not proper Respondents; and (2) dismissing the Petition without prejudice due to Camara's failure to exhaust his administrative remedies relating to the denial of his request for bond. (Doc. No. 7.)

### 2. *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026)

Three days later, on May 11, 2026, the Sixth Circuit issued its decision in *Lopez-Campos, et al., v. Raycraft*, *et al*., 175 F.4th 713 (6th Cir. 2026). In that case, the Sixth Circuit considered a consolidated appeal of the decisions of four Michigan district courts granting habeas relief under § 2241. As the Sixth Circuit explained, the petitioners in these cases "are citizens of Mexico, El Salvador, Venezuela, Nicaragua, and Guatemala who have resided in the United States without lawful status for years" and "without much incident outside of some minor traffic offenses." *Id*. at * 1. Petitioners "were arrested by [ICE], charged with entering the United States without inspection, and, pursuant to 8 U.S.C. § 1225(b)(2)(A)'s mandatory detention statutory scheme and the [BIA's] decision *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), detained without a determination of their flight risk and dangerousness." *Id*.

5

The petitioners filed their respective habeas petitions in the Eastern and Western Districts of Michigan, arguing that they were unlawfully detained under § 1225(b)(2)(A) and should have instead been detained under § 1226 and provided a bond hearing. *Id*. In addition, the petitioners claimed that the Government's failure to provide a bond hearing to determine whether they posed a flight risk or danger to others, under any detention statute, violated their due process rights. *Id*. The district courts granted the petitions, agreeing with the petitioners that § 1226(a) governed their detention and thus the petitioners should have been afforded a bond hearing before an IJ under that statute. With one exception, the district courts also determined that the Government's failure to provide a bond hearing violated the petitioners' Fifth Amendment due process rights. The Government appealed.

A panel of the Sixth Circuit affirmed, finding that the district courts did not err when they held that the petitioners' detentions under § 1225(b)(2)(A) were unlawful and that petitioners should have been provided individualized bond hearings under § 1226(a). The Sixth Circuit also affirmed the district courts' determinations that the Government's detention of petitioners without bond under § 1226(a) was a deprivation of liberty that violated their due process rights.

### 3  Camara files his Motion for Reconsideration

On May 26, 2026, Camara filed a Motion for Reconsideration based on *Lopez-Campos, supra*. (Doc. No. 9.) In its entirety, Camara's Motion provides as follows:

> Now comes Petitioner, Mousa Adam Camara, to respectfully request that this honorable Court reconsider [its] May 8, 2026 denial of his petition under 28 U.S.C. § 2241 for Writ of Habeas Corpus. In that denial, the Court noted that "As of the date of this Order, Circuit Courts of Appeals have reached conflicting decisions regarding whether the Government's interpretation of § 1225(b)(2)(A) is lawful. (May 8, 2026 Dec. p. 10). The Court further notes that "The Sixth Circuit recently heard oral arguments on this issue but (as of the date of this Order) had not yet ruled. *See Lopez-Campos, et al. v. Raycraft, et al.*, Case No. 25-1965 (6th Cir.) (oral arguments held on March 18, 2026). (May 8, 2026 dec., p. 11).

6

> As the Court is aware, on May 11, 2026, three days after the Court ruling in this matter the Sixth Circuit ruled in *Lopez-Campos v. Raycraft* that the government cannot subject undocumented aliens to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). Accordingly, Petitioner, through undersigned Counsel, respectfully request[] the Court reconsider its [M]ay 8, 2026 denial of his Habeas petition at this time.

(*Id*. at PageID#128.)  Respondents filed a Brief in Opposition on June 1, 2026.  (Doc. No. 10.) Petitioner did not file a Reply.

## II.      Analysis

As set forth above, relying on *Lopez-Campos, supra*, Camara asks this Court to reconsider its May 8, 2026 decision denying his Petition without prejudice.  (Doc. No. 9.)  Camara provides no reasoned legal argument or discussion in support of his request.  (*Id*.)

In response, Respondents first argue that Camara's Motion should be denied because it is "completely devoid of any argument."  (Doc. No. 10 at PageID# 132.)  Noting that this Court dismissed the Petition without prejudice due to Camara's failure to exhaust his administrative remedies, Respondents next maintain that Camara's Motion should be denied because he "has yet to exhaust his administrative remedies."  (*Id*.)  Respondents assert that "the immigration court is following the dictates of *Lopez-Campos* and has been setting bond hearings."  (*Id*.)  Respondents argue that Camara "does not allege that he filed a bond redetermination motion with the immigration court that has been denied" and maintain that Camara "would receive a bond hearing without intervention of this Court, if [he] exhausted his administrative remedies."  (*Id.*)  Accordingly, Respondents assert that Camara's Motion for Reconsideration should be denied because he has failed to exhaust his administrative remedies.  As noted above, Camara failed to file a response to Respondents' Brief in Opposition.

At the outset, the Court notes the Sixth Circuit does not address the issue of administrative exhaustion in *Lopez-Campos, supra* or otherwise suggest that an alien detained under § 1225(b)(2)(A) should not be required to at least request a bond hearing before an IJ prior to seeking habeas relief in federal court. For the following reasons, the Court finds that principles of exhaustion weigh strongly in favor of requiring Camara to do so.

The general rule is that "a party may not seek federal judicial review of an adverse administrative determination until the party has first sought all possible relief within the agency itself." *Howell v. INS*, 72 F.3d 288, 291 (2nd Cir. 1995) (quoting *Guitard v. United States Sec'y of Navy*, 967 F.2d 737, 740 (2nd Cir. 1992)) (internal quotation marks omitted). *See also Beharry v. Ashcroft*, 329 F.3d 51, 56 (2nd Cir. 2003). "Exhaustion of administrative remedies serves numerous purposes, including protecting the authority of administrative agencies, limiting interference in agency affairs, and promoting judicial efficiency by resolving potential issues and developing the factual record." *Beharry,* 329 F.3d at 56.

The requirement of administrative exhaustion can be either statutorily or judicially imposed as a matter of prudence. *See Beharry*, 329 F.3d at 56. *See also Perkovic v. I.N.S.,* 33 F.3d 615, 619 (6th Cir. 1994) (holding that exhaustion requirements not written into the text of a statute are prudential, not jurisdictional); *Brito v. Garland,* 22 F.4th 240, 255 (1st Cir. 2021) ("There are two species of exhaustion: statutory and common-law."); *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007). "The former deprives a federal court of jurisdiction, while the latter 'cedes discretion to a [federal] court to decline the exercise of jurisdiction.'" *Brito,* 22 F.4th at 255 (quoting *Anversa v. Partners Healthcare System, Inc.*, 835 F.3d 167, 174 (1st Cir. 2016)). *See also Puga*, 488 F.3d at 815. In other words, "exhaustion of administrative remedies is absolutely required if explicitly

8

mandated by Congress," but "courts have more latitude in dealing with exhaustion questions when Congress has remained silent." *Portela-Gonzalez v. Sec'y of the Navy*, 109 F.3d 74, 77 (1st Cir. 1997).

Here, the parties agree (and the Court presumes) that the requirement of administrative exhaustion in the instant matter falls within this Court's discretion. (Doc. No. 1 at PageID#s 10-11; Doc. No. 5 at PageID# 65.) The parties fail to direct this Court's attention to any binding authority regarding the appropriate standard for evaluating whether to require exhaustion as a prudential matter in this context. Consistent with other recent district court decisions in this Circuit, this Court will set forth and apply the Ninth Circuit's test for prudential exhaustion below.[5] Under the Ninth Circuit's test, courts may require prudential exhaustion when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Puga,* 488 F.3d at 815 (citations omitted) (hereinafter "the *Puga* factors"). *See also Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017).

The Court has considered the *Puga* factors and finds that all three weigh in favor of requiring administrative exhaustion under the circumstances presented. Beginning with the first *Puga* factor, the Court finds that the IJ's expertise makes agency consideration beneficial to generate a proper

---

[5] As one district court noted, "the Sixth Circuit has endorsed [the Ninth Circuit's] procedure for challenging bond determinations, albeit in a short, unpublished order." *Monroy Villalta v. Greene*, 794 F.Supp.3d 528, 530 (N.D. Ohio 2025) (citing *Rabi v. Sessions*, 2018 U.S. App. Lexis 19661 (6th Cir. July 16, 2018)) (citing *Leonardo v. Crawford*, 646 F.3d 1157 (9th Cir. 2011)). *See also Shweika v. DHS*, 2015 WL 6541689 (E.D. Mich. Oct. 29, 2015). Moreover, at least one district court in this Circuit has applied the Ninth Circuit's test for prudential exhaustion in the bond context since the Sixth Circuit decided *Lopez-Campos, supra*. *See Serigne Samb v. Raycraft, et al*., 2026 WL 1700532 at * 2-3 (W.D. Mich. June 12, 2026).

9

record and reach a proper decision. Respondents assert (and Camara does not dispute) that the Immigration Court "is following the dictates of *Lopez-Campos* and has been setting bond hearings." (Doc. No. 10.) Yet, Camara has nonetheless failed to file a request for bond redetermination with the Immigration Court in the over four weeks since *Lopez-Campos* was decided. Camara offers no reason for his failure to do so nor has he otherwise explained why he should not be required to request a bond redetermination hearing before the IJ (and allow the IJ to rule on such a request) before seeking habeas relief in this Court. In the absence of any meaningful argument to the contrary, the Court finds that the first *Puga* factor weighs in favor of requiring Camara to pursue his administrative remedies by filing a request for bond redetermination with the IJ on the basis of *Lopez-Campos* and allowing the IJ to rule on that request, before seeking federal habeas relief.

The second *Puga* factor also weighs in favor of requiring exhaustion because the Court "has concerns that relaxing the exhaustion requirement would encourage the deliberate bypass of the administrative scheme in favor of what may be perceived as a potentially more favorable and/or timely reviewing body, i.e., federal court." *Mendoza v. Raycraft*, 2025 WL 3157796 at *10 (N.D. Ohio Nov. 12, 2025). Indeed, here, Camara's "apparent attempt to sidestep [the bond redetermination process before the IJ] in favor of habeas review highlights the need for an exhaustion requirement [] to protect agency authority, limit interference with agency affairs, and promote judicial efficiency." *Bartolon v. Bondi*, 813 F.Supp.3d 811, 824 (S.D. Ohio 2025).

Finally, the Court finds that the third *Puga* factor weighs in favor of requiring exhaustion, as administrative review would allow the agency to correct its own alleged mistakes and alleviate the need for judicial review. Notably, here, Camara does not contest that the IJ could (and, according to Respondents, would) provide the same relief he now seeks before this Court, if he simply filed a

10

request for bond redetermination on the basis of *Lopez-Campos*. "Requiring exhaustion under these circumstances therefore promotes the main purposes of exhaustion, i.e., it protects the [immigration court's] authority by allowing it the opportunity to correct its own mistakes and, further, promotes judicial efficiency by resolving potential issues and potentially obviating the need for judicial review." *Mendoza*, 2025 WL 3157796 at *10.

Accordingly, and for all the reasons set forth above, the Court finds that the three *Puga* factors weigh in favor of requiring Camara to exhaust his administrative remedies. Nonetheless, even if the three *Puga* factors weigh in favor of requiring exhaustion, a court may waive the prudential exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (citation and quotation marks omitted). Here, Camara does not offer any reason why this Court should waive the exhaustion requirement and the Court declines to do so. Given Respondents' unchallenged assertion that the "immigration court is following the dictates of *Lopez-Campos* and has been setting bond hearings," there is no reason to believe that requiring Camara to file a bond redetermination request in Immigration Court would be futile. Nor has Camara argued (or presented any evidence) that there would be prolonged or undue delay associated with requiring him to seek a bond hearing in Immigration Court on the basis of *Lopez-Campos* at this time.

At least one district court in this Circuit recently reached a similar conclusion. Specifically, in *Serigne Samb v. Raycraft, et al.*, 2026 WL 1700532 (W.D. Mich. June 12, 2026), the district court required petitioner to exhaust his administrative remedies post-*Lopez-Campos*, explaining as follows:

> In resolving hundreds of prior petitions like Petitioner's, this Court concluded that prudential exhaustion should not be required after balancing the prudential

11

considerations and the likely futility of starting with an agency decision. **But after the Sixth Circuit's decision in *Lopez-Campos* and the government's unequivocal commitment to apply its holding in this case, administrative review of the controlling legal question is likely to result in an agency decision that honors the law. This, in turn, means that exhaustion is no longer futile. Therefore, the Court will require Petitioner to exhaust his administrative remedies**. The Court will dismiss the petition without prejudice. Should administrative exhaustion again prove to be an unavailable path to allow the agency to correct its own mistakes, Petitioner may file a new petition.

*Id*. at * 3 (emphasis added).

Accordingly, and for all of the above reasons, the Court finds that Camara must exhaust his administrative remedies by requesting a bond redetermination before the Immigration Court on the basis of *Lopez-Campos*.  Camara's Motion for Reconsideration (Doc. No. 9) is, therefore, denied.

## IV.    Conclusion

For all the reasons set forth above, Petitioner's Motion for Reconsideration (Doc. No. 9) is denied.

**IT IS SO ORDERED.**

Dated:  June 16, 2026                         *s/Pamela A. Barker*
                                              PAMELA A. BARKER
                                              UNITED STATES DISTRICT JUDGE

12